[Crim. No. 24517. Second Dist., Div. Five. May 15, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE LUIS OAXACA, Defendant and Appellant.

■

## COUNSEL

Richard S. Buckley, Public Defender, Harold E. Shabo, Sherman W. Smith and A. Jane Fulton, Deputy Public Defenders, for Defendant and Appellant.

Burt Pines, City Attorney, and Gerry L. Ensley, Deputy City Attorney, for Plaintiff and Respondent.

## OPINION

**STEPHENS, Acting P. J.**—On December 7, 1973, the Los Angeles Superior Court Appellate Department certified the instant case to this court. The important issue of law is specified as: "When a defendant in the municipal court is represented by counsel and enters into a plea bargain, may· a commissioner of that court accept a plea and impose sentence in accordance with the plea bargain without an express stipulation that he may act as a [temporary judge]?" We add: or does the plea bargain proceeding render the action an uncontested one and therefore within the authorized duties of a commissioner?[1]

We divide, as we must, the posed question into two. The first question which requires answering is: Does a commissioner, under the facts of this case, have the authority to accept a plea bargain guilty plea and to pronounce sentence?[2] We answer this question in the negative.

The facts in brief are that defendant had thrice been arrested. The first time was for violation of Penal Code section 647, subdivision (b) (solici-

---

[1]California Constitution, article VI, section 22: "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties."

[2]To phrase the question in another way is to ask: Is the sentence following arraignment for sentence (after the acceptance of a plea bargain) an act within a commissioner's power under Code of Civil Procedure section 259a, subdivision 6 (as an uncontested action or proceeding)?

■

156

tation for, or prostitution); he entered a guilty plea to violation of Penal Code section 602, subdivision (*l*) (criminal trespass). The second time was for a violation of Penal Code section 647, subdivision (a) (solicitation for, or engaging in, lewd conduct); he pled guilty to a violation of subdivision (b) of that section. At the time of each entry of plea, defendant was represented by counsel (the public defender), and the plea was pursuant to a plea bargain. In each instance the plea and sentence was before then Commissioner Stromwall. The third arrest was for probation violation of the two referred-to cases.

The settled statement on appeal leaves much to be desired. The statement that "the plea and subsequent sentence were as a result of a '*People v. West*' plea bargain" fails to inform us as to whether the sentence had been agreed to prior to and as a part of the bargain or not. The importance of having this fact determined is of major consequence in considering the questions posed. The referred-to *People* v. *West* is to be found in 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409]. In that case, at page 605, it is stated: .

"Plea bargaining also permits the courts to treat the defendant as an individual, to analyze his emotional and physical characteristics, and to adapt the punishment to the facts of the particular offense. (See generally Newman [Conviction: The Determination of Guilt or Innocence Without Trial], pp. 112-130). In some cases, only the bargained reduction in the charge can enable the judge to exercise his discretion as to meaningful sentencing alternatives. [Fn. omitted.] The ABA Standards note that 'Conviction of the offense actually committed may result in severe restrictions on the sentencing judge's discretion; for example, the offense may carry a high mandatory minimum sentence or may not be probationable. Trial judges are extremely critical of such restrictions, as they feel that by "accepting lesser pleas . . . [there may result] a finer adjustment to the particular crime and offender than the straight application of the rules of law would permit." ' (ABA Standards, p. 45, quoting in part from Breitel, *Controls in Criminal Law Enforcement* (1960) 27 U.Chi.L.Rev. 427, 432; see [President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society (1967)], p. 135; Newman, pp. 112-113.)"

and on pages 607-608:

"Since 1957 California has provided by statute for a limited form of plea bargain; Penal Code section 1192.3 permitted a defendant who pled guilty to specify the punishment to the same extent that it could be specified by a jury, and provided that if the specification received the concurrence of

·the prosecution and the court, the punishment could not exceed that designated.[10] In 1970 the Legislature greatly expanded this statutory form of plea bargain by enacting section 1192.5, which permits the defendant to state the punishment to the extent it may be fixed by the court, and to specify the exercise of the court's power to grant probation or suspend sentence.[11]"

We have stated that it was of major importance to know whether the *sentence* was part of the plea bargain or not. (1) If the sentence was an integral part of the plea bargain, was the *acceptance* of the bargain "subordinate judicial duty" which a commissioner may perform? (Art. VI, § 22.) (2) If the plea bargain as offered to the court relates solely to the acceptance of a plea to a lesser offense or number of offenses, leaving open the determination of an appropriate sentence, is the *acceptance* of the bargain *and the imposition of a sentence* within the power of a commissioner? We are of the opinion that the answer to both questions is

---

"[10]Section 1192.3 states that: 'Upon a plea of guilty to an information or indictment for which the jury has, on a plea of not guilty, the power to recommend, the discretion of imposing, or the option to impose a certain punishment, the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty. Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant cannot be sentenced to a punishment more severe than that specified in the plea.' (Repealed and replaced by Pen. Code, § 1192.5, effective Nov. 23, 1970.)"

"[11]Section 1192.5, effective November 23, 1970 provides as follows:

" 'Upon a plea of guilty or nolo contendere to an information or indictment, the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty, or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it.

" 'Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on such plea to a punishment more severe than that specified in the plea and the court may not proceed as to such plea other than as specified on the plea.

" 'If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in such case, the defendant shall be permitted to withdraw his plea if he desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for such plea.

" 'If such plea is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available.

" 'If such plea is withdrawn or deemed withdrawn, it may not be received in evidence in any criminal, civil, or special action or proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals.' "

that to make either or both determinations is of major proportion in the exercise of judicial duty.

We recognize that a commissioner, as such, has no authority to do acts in excess of those generally prescribed by the Constitution (art. VI, § 22). We determine that sentencing, including imposition of probation, is certainly not a "subordinate judicial duty" even when the defendant has pleaded guilty (except in the limited situations specified in Gov. Code, § 72401, subd. (b), *infra*). The contested nature of a criminal trial does not end with a guilty plea. The variations permitted under the sentencing portion of criminal procedure retain the elements of a contested action even to the extremes of probation to life imprisonment. Recognizing this fact, the Legislature has provided by Government Code sections[3] that there are certain duties which a commissioner or traffic referee could perform, but specifically has prohibited him from performing others, including imposition of terms of probation.[4]

---

[3] We refer to these sections only in analysis of the broader picture.

[4] Government Code section 72300, subdivision (b): ". . . . The judges of the court may appoint a commissioner or traffic referee for the purposes of conducting arraignment proceedings, the taking of pleas, and the setting of cases for trial and the commissioner or traffic referee shall have the same powers as the judge in conducting arraignments, the taking of pleas, and the setting of cases for trial in traffic offenses. . . ."

Government Code section 72304: "Any commissioner or traffic referee of such court may exercise all of the powers and duties provided for in this article for the clerk relating to bail and the discharge of defendants under bail, and the authority to fix the amount of bail in cases of misdemeanor defined in the Vehicle Code and to endorse it upon the notice for the appearance of the defendant as provided by Section 40511 of the Vehicle Code. Nothing in this article shall be construed to reduce or limit the powers or authority of such commissioners or traffic referees otherwise provided by law."

Government Code section 72401: "At the direction of the court the traffic referee may do any of the following:

"(a) With respect to any misdemeanor violation of the Vehicle Code he may fix the amount of bail, grant continuances, arraign the defendant, hear and recommend orders to be made on demurrers and motions other than for continuances, take pleas and set cases for hearing or trial.

"(b) With respect to any misdemeanor violation falling within the provisions of subdivision (b) of Section 42001 of the Vehicle Code or any infraction he may perform any of the duties set forth in subdivision (a) of this section and *in addition he may impose a fine following a plea of guilty or nolo contendere not to exceed the bail provided for that offense in the county bail schedule adopted pursuant to subdivision (c) of Section 1269b of the Penal Code and he may order that payment of the fine or any portion thereof be suspended but may not impose express conditions of probation.* He may also order the defendant to attend a school for traffic violators pursuant to the provisions of Section 42005 of the Vehicle Code." (Italics added.)

Government Code section 72402: "In conducting arraignments, taking pleas, granting continuances, setting cases for trial and imposing penalties for traffic offenses

In addition, we note that a commissioner may "hear, report on and determine all uncontested actions and proceedings other than actions for divorce, maintenance or annulment of marriage" without a stipulation only "when ordered by the court appointing him so to do." (Code Civ. Proc., § 259a, subd. 6, *infra,* fn. 5.) In the instant case, as in the case of *Sarracino* v. *Superior Court,* 37 Cal.App.3d 1058 [112 Cal.Rptr. 841], the record before us does not show such a court order. Though *Rooney* v. *Vermont Investment Corp.,* 10 Cal.3d 351 at page 368 [110 Cal.Rptr. 353, 515 P.2d 297] provides "The order may take any form that establishes the court's official determination that the proceeding is one that the commissioner should hear and determine," as we have noted, there is no such order in this case. Thus, even were we to determine that the action here was uncontested (which we do not), the commissioner cannot be said to have had authority in the matter.

■ With the conclusion that, under the stipulated facts, a commissioner did not have the authority to impose the sentence, we necessarily have remaining for analysis and determination defendant's contention raising the question (as we have divided it) which brought about the certification of the case to this court. Our conclusion (and that of the superior court appellate department) is that in this case the commissioner, *sitting as a temporary judge,* had the jurisdictional power to accept the plea and impose sentence when he was presented with the plea bargain.

Where, however, the commissioner, like any other licensed attorney at law, is clothed with the authority of a judge "by stipulation of the parties litigant" (art. VI, § 21, Cal. Const.), his authority is governed by the laws applicable to judges, not commissioners, and he may determine contested matters, which includes the ultimate power of imposition of sentence.

The powers of a commissioner are those hereinbefore set forth, and emanate from the California Constitution and implementing legislation. Article VI, section 21 reads: "On stipulation of the parties litigant the court may order a cause to be *tried* by a temporary judge who is a member of the State Bar sworn and empowered to act until final determination of the cause." (Italics added.)

---

as provided in this article the traffic referee shall have the same powers as a judge of the court."

Government Code section 72405: "Any commissioner of the court having the qualifications prescribed in this article for a traffic referee or those prescribed in Section 72190 for commissioners may at the direction of the court exercise any of the powers which a traffic referee may exercise."

In the instant case, the plea bargain was struck before Stromwall, and the judgment was imposed without a written stipulation that he could act as a temporary judge.[5] Defendant was placed on probation in each instance, conditioned among other things that defendant "submit to and cooperate in field interrogation by any police officer at any time of day or night, carry at all times a valid California driver's license or Department of Motor Vehicles identification card containing his true name, age, current address, and shall display such identification upon request to any peace officer or officer of the court upon request and not use any other name for any purpose, not solicit or accept a ride from motorists, or be parked in a motor vehicle with a lone male motorist, not approach male pedestrians or motorists, or engage them in conversation upon a public street or in a public place, not occupy a hotel or motel room, or any other residence unless registered in his own true name."

While thus on probation, defendant was arrested "for a violation of his probation." (At midnight on February 7, 1973, Los Angeles Police Officers Kennedy and Fischer observed defendant walking in the area of Cahuenga Boulevard and Yucca Street in the Hollywood area. He was in the company of another female impersonator. They were walking slowly and "in the manner of a street-walking prostitute." Defendant approached and appeared to speak to several lone, male motorists. Defendant was known to be on probation under the conditions set forth *supra*.) Hearing was set and then continued some 12 days, at which time the violation hearing was held before Judge Stromwall, who had since become a municipal court judge (on Jan. 8, 1973). Defendant was found to be in violation of probation, i.e., (1) failing to carry identification; (2) approaching male pedestrians and motorists, or engaging them in conversation upon a public street or in a public place. The specificity of the judge's findings complies with *Morrissey* v. *Brewer*, 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]. Probation was revoked and reinstated upon the same conditions theretofore imposed, plus defendant's serving an ad-

---

[5]Code of Civil Procedure, section 259a: "Subject to the supervision of the court, every court commissioner of a county or city and county having a population of [900,000] inhabitants or more shall, in addition to the powers and duties contained in Section 259 of this code have power: . . . 4. To act as judge pro tempore [art. VI, § 21, Cal. Const.] when otherwise qualified so to act and when appointed for that purpose; provided, that while acting as such he shall receive no compensation therefor other than his compensation as commissioner; . . . 6. When ordered by the court appointing him so to do, to hear, report on and determine all uncontested actions and proceedings other than actions for divorce, maintenance or annulment of marriage; . . ."

ditional 30 days in the county jail. The probationary term was extended to 36 months from the probation-revocation hearing date.

At the time Stromwall accepted defendant's plea of guilty pursuant to the plea bargain and imposed sentence, Stromwall acted either solely in his capacity as a commissioner or as a temporary judge. (*Rooney* v. *Vermont Investment Corp., supra,* at p. 360.) The fact that defendant was represented by an experienced public defender, participated in the plea bargaining, and accepted the sentence which was part of that plea bargain, strongly suggests that the proceedings were in accordance with a de facto stipulation that the commissioner might act as a temporary judge. (*Estate of Soforenko,* 260 Cal.App.2d 765 [67 Cal.Rptr. 563]. In *Soforenko,* the parties litigant participated at length in the hearing. The *Soforenko* court held (p. 766): "Appellant attacks the jurisdiction of the court on the ground that the matter was heard and determined by a commissioner sitting as judge pro tempore without compliance having been had with a constitutional provision for a stipulation by the parties litigant. (Cal. Const., art. VI, § 5 [now, § 21].) The record shows that at the hearing appellant was represented by an attorney who noted his appearance on the record; he voiced no objection to the matter being heard by the commissioner, and he participated fully in the hearing which ensued. He examined the executor as a witness at some length. He argued appellant's objections to the account, and the asserted inadequacy of the report. At the conclusion of the hearing and in response to the court's inquiry as to findings, the attorney replied 'Findings waived,' as did the attorney for the executor. We construe all this deportment on the part of appellant's attorney as tantamount to a stipulation that the matter could be heard by the commissioner. California Rules of Court, rule 244, which deals with the selection of judges pro tempore is by subdivision (b) of the rule expressly made inapplicable to the selection of a court commissioner to act as a judge pro tempore. The appointment of a commissioner as judge pro tempore is governed by Code of Civil Procedure, section 259a, subdivision 4. Under all the circumstances, we find that there was no error in a commissioner serving as a judge pro tempore in this instance."[6] [Fn. omitted.]

Defendant relies upon *People* v. *Tijerina,* 1 Cal.3d 41 [81 Cal.Rptr. 264, 459 P.2d 680] to support his contention that the sentences were

---

[6]This case was followed in *Stein* v. *Hassen,* 34 Cal.App.3d 294 [109 Cal.Rptr. 321]. Though decided after *People* v. *Tijerina, infra,* no distinction was articulated. *Rooney* v. *Vermont Invest. Corp., supra,* tacitly approves the *Soforenko* rule while following *Tijerina.*

not pronounced by a temporary judge. In *Tijerina,* the defendant, in a revocation of probation hearing, sought a continuance in order to obtain private counsel. This was denied. Probation was revoked. The court held (at p. 48): "Defendant contends that the order is void on the ground that no stipulation was entered into permitting the commissioner to act as a temporary judge in the case in which it was entered. We agree with this contention."[7] Under these facts it is clear that defendant did not of his own

[7]*People* v. *Tijerina,* 1 Cal.3d 41, at pp. 48-49 [81 Cal.Rptr. 264, 459 P.2d 680]: "As revised in 1966, section 21 of article VI of the California Constitution provides:

" 'On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause.'

"The purpose of the Constitution Revision Commission in proposing this revision was to restate the substance of the existing section (then art. VI, § 5)[5] concisely in modern terms (see Proposed Revision, *supra,* fn. 1, p. 98; *Estate of Soforenko* (1968) 260 Cal.App.2d 765, 766 [67 Cal.Rptr. 563]) and to extend the authority to use temporary judges to justice courts. (See 1967 Judicial Council Report, p. 89.) Both before and after the 1966 revision of article VI, however, a stipulation of the parties was constitutionally required for one not occupying the office of judge to serve as a temporary judge. (*In re Chapman* (1956) 141 Cal.App.2d 387, 390 [295 P.2d 573]; *In re Wales* (1957) 153 Cal.App.2d 117, 119 [315 P.2d 433].) To the extent that *Martin* v. *Martin* (1963) 215 Cal.App.2d 338, 339 [30 Cal.Rptr. 293], is to the contrary, it is disapproved.

"There is nothing in Code of Civil Procedure section 259a, subdivision 4 or in rule 244[6] of the California Rules of Court contrary to our conclusion herein. Subdivision 4 of section 259a authorizes any court commissioner in Los Angeles County to act as a temporary judge 'when otherwise qualified so to act and when appointed

"[5]Section 5 of article VI, as it read prior to 1966, provided:

" 'Upon stipulation of the parties litigant or their attorneys of record a cause in the superior court or in a municipal court may be tried by a judge pro tempore who must be a member of the bar sworn to try the cause, and who shall be empowered to act in such capacity in the cause tried before him until the final determination thereof. The selection of such judge pro tempore shall be subject to the approval and order of the court in which said cause is pending and shall also be subject to such regulations and orders as may be prescribed by the Judicial Council.' "

"[6]Rule 244. Selection, qualification and trial by judge pro tempore.

" '(a) The stipulation of parties litigant that a case may be tried by judge pro tempore shall be in writing and shall set out in full the name and office address of the member of the State Bar agreed upon to act as judge pro tempore, and shall be submitted to the presiding judge, or to the judge in whose department the case is pending in courts which do not have a presiding judge. If the member of the State Bar agreed upon consents so to act and if his selection is approved by the judge, the approval and order designating the person selected as judge pro tempore shall be endorsed upon the stipulation, which shall thereupon be filed. The judge pro tempore so selected shall take and subscribe the oath of office, which shall be attached to the stipulation and order of approval, and the case shall thereupon be assigned to said judge pro tempore for trial. At any time after the filing of the oath, the judge pro tempore may proceed with the hearing, trial and determination of the case.

" '(b) Subdivision (a) of this rule does not apply to the selection of a court commissioner to act as a judge pro tempore.' "

volition participate in the proceedings, and hence his participation was not "tantamount to a stipulation" that the commissioner act as a temporary judge. Likewise, in *Mosler* v. *Parrington,* 25 Cal.App.3d 354 [101 Cal. Rptr. 829], (disapproved in other aspects in *Rooney, supra,* at p. 366), there was no willing participation in the proceedings, and the order there was declared invalid because it was rendered by a purported temporary judge when in fact there had been no stipulation that he might so act. The same is true of *Sarracino* v. *Superior Court,* 37 Cal.App.3d 1058 [112 Cal.Rptr. 841].

*Lovret* v. *Seyfarth,* 22 Cal.App.3d 841, 853 [101 Cal.Rptr. 143] concludes that no stipulation, oral or written, existed and hence the orders of the "temporary judge" were void. The *Soforenko* exception to an articulated or written stipulation was not followed because "participation of the parties in a trial or hearing before a disqualified judge, whose decision is later determined to be void, does not estop the parties from later asserting the invalidity of the judicial action." (Citing *Cadenasso* v. *Bank of Italy,* 214 Cal. 562, 567 [6 P.2d 944].)

Upon further analysis of *Lovret, supra,* we conclude that there is a marked distinction between a judge who is disqualified to act under any circumstance and one who may act with the acquiescence of the parties. The term "disqualified" as it relates to the two persons connotes two distinctly different concepts. Also, *Cadenasso* (p. 570) recognizes (which was not considered in *Lovret*) that where a disqualified judge (as used in that case) renders a judgment, the parties may be estopped from an attack on that judgment by unwarranted delay in seeking relief. The rule is well stated in *Develop-Amatic Engineering* v. *Republic Mortgage Co.,* 12 Cal.App.3d 143, 150 [91 Cal.Rptr. 193]: "The disqualification of a judge provided for in Code of Civil Procedure section 170 must be asserted at the 'earliest practicable opportunity' after learning of the grounds therefor, otherwise it is deemed waived. (*Muller* v. *Muller,* 235 Cal.App. 2d 341, 345 [45 Cal.Rptr. 182]; *Caminetti* v. *Pac. Mutual L. Ins. Co.,* 22

---

for that purpose.' Rule 244 sets forth the procedure for appointing a member of the State Bar to act as a temporary judge and excepts from its requirements the selection of a court commissioner to act as a temporary judge. Neither the rule nor the statute purports to authorize a court commissioner to act as a temporary judge if he is not 'otherwise qualified so to act,' and in the absence of a stipulation of the parties, he is not so qualified.

"Since there was no stipulation authorizing the commissioner to act as a temporary judge in No. 307540, the order revoking probation must be reversed, and since defendant's probationary period expired on March 28, 1968, no order of revocation can now be made (*In re Griffin* (1967) 67 Cal.2d 343, 346-347 [62 Cal.Rptr. 1, 431 P.2d 625].)"

Cal.2d 386, 391 [139 P.2d 930]; *Mayo* v. *Beber,* 177 Cal.App.2d 544, 549 [2 Cal.Rptr. 405].) Here plaintiff could have urged such disqualification at the time the court made its comments. (See *Muller* v. *Muller, supra,* at p. 347; *Oak Grove School Dist.* v. *City Title Ins. Co.,* 217 Cal. App.2d 678, 703 [32 Cal.Rptr. 288].) Plaintiff failed to do so. Accordingly, he waived any claimed grounds of disqualification since he could not gamble on a favorable judgment and then move for disqualification upon receiving an adverse judgment. (See *Keating* v. *Superior Court,* 45 Cal.2d 440, 446-447 [289 P.2d 209]; *Mayo* v. *Beber, supra,* at p. 552; *People* v. *Tappan,* 266 Cal.App.2d 812, 817 [72 Cal.Rptr. 585].)" Though we recognize distinctions between *Develop-Amatic* and the cases cited therein and the instant one, we conclude that the principle expressed in *Caminetti* v. *Pac. Mutual L. Ins. Co.,* 22 Cal.2d 386, 392 [139 P.2d 930] (relied upon in *Develop-Amatic*) is equally applicable to our problem: "Under all the circumstances, the following from the concurring opinion in the *Lindsay-Strathmore* case [182 Cal. 315 (187 P. 1056)], *supra,* appears appropriate: 'It would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.' "

As to *Tijerina, supra,* we note that the distinction we have drawn was voiced in *People* v. *Surety Ins. Co.,* 18 Cal.App.3d Supp. 1[8] [95 Cal.Rptr. 925] and tacitly approved in *Rooney* v. *Vermont Investment Corp., supra,* 10 Cal.3d 351, 360: "The stipulation for settlement did not include a provision that a temporary judge might act for the court in hearing or determining an application for judgment or in rendering a judgment, and a stipulation specifying only the conditions under which a court may enter a judgment cannot be construed to be equivalent to a stipulation that judgment may be rendered by a court commissioner acting as a temporary judge. *Nor are we here concerned with the conditions under which voluntary participation in a court proceeding before a commissioner may be tantamount to a stipulation that the commissioner serve as a temporary judge* (see *People* v. *Surety Ins. Co.* (1971) 18 Cal.App.3d Supp. 1 [95 Cal.Rptr. 925]), as defendants in the instant case were not notified of any date of hearing and were not present at the presentation to the commissioner of plaintiffs' application for entry of the judgment." (Italics

---

[8]It was noted in *Surety* (by footnote) that: "It is noteworthy that the California Supreme Court was aware of the decision in *Soforenko,* having cited the case in its opinion, and did not disapprove it as it did *Martin* v. *Martin* (1963) 215 Cal.App.2d 338 [30 Cal.Rptr. 293]."

added.) In the *Rooney* case, the court found that no stipulation for the commissioner to act in the capacity of temporary judge was "shown by the record."

In *Martin* v. *Martin*, 215 Cal.App.2d 338 [30 Cal.Rptr. 293] (disapproved in *Tijerina* at 1 Cal.3d 41, 48), the court stated as a conceded fact "that neither appellant nor her attorney made any oral or written stipulation" for hearing by a temporary judge. Nevertheless, that court found that the trial *court* could accomplish the appointment of a temporary judge even in the absence of acquiescence of the parties litigant. It was this latter holding which was disapproved.

Consent via the *Soforenko* rule makes the commissioner a temporary judge and the act legal. As we have stated, this is particularly true where defendant is represented by an attorney, participates in the plea bargain, and the defendant knowingly and wilfully accepts the result of the sentence.

In the instant case, the stipulation of facts establishes that after defendant (in each case) entered his plea of guilty to the charge agreed to in the plea bargain, he "was arraigned for sentence and sentenced without objection. Defendant was given a copy of the terms and conditions of his probation, indicated he had read, understood and agreed to comply with the terms and conditions of his probation."

Stromwall, as a temporary judge, had a constitutional right to act as judge. (Art. VI, § 21.) (*Stein* v. *Hassen, supra,* 34 Cal.App.3d 294, 298 (fn. 4): A temporary judge does not act under article VI, section 22 (as a commissioner) and is not limited to "subordinate judicial duties." Whether Stromwall, at a time when he was a commissioner, in arriving at what he determined to be a fair sentence, exceeded his legal authority as commissioner, is not of moment when he sat as a temporary judge. When all the parties "stipulate" orally or in writing, or under the *Soforenko* rule, the commissioner becomes and is at the time of the approval of the plea bargain and pronouncement of sentence a temporary judge.

While affirming the trial court, we believe and strongly urge that even under situations where plea bargains are involved it would be better practice to obtain a specific oral or written stipulation. Such practice would eliminate the necessity of determining the validity of the sentence on a case-by-case basis.

In response to the other contentions of defendant, we adopt verbatim that portion of the opinion of the superior court appellate department

(written by Marshall, J., and concurred in by Katz, P. J., and Zack, J.), which properly and succinctly disposes of them:

■ "As to those objections of the defendant raised in group 3 [9] [the hearing as conducted denied appellant due process of law and an adequate opportunity for confrontation] which may be based on *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], adopted by California in *People* v. *Vickers* (1973) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313], we find that the probation revocation hearing was conducted within the guidelines laid down by *Morrissey*. Formal trial procedure is not required. The reading of the police report into evidence was followed by the judge's inquiry whether the defendant wished to cross-examine the officer. Such cross-examination did occur. [We add the citation of *People* v. *Ruelas,* 30 Cal.App.3d 71 (106 Cal.Rptr. 132).] With regard to the contention that the judge presiding at the violation hearing was not a 'neutral and detached' fact finder, it must be noted that all *Morrissey* contemplated was a hearing conducted by one other than the probation officer and not necessarily a judicial officer. (*Vickers, supra,* p. 456.)" [10] Defendant was adequately provided with the factual matter upon which the revocation hearing was based.

■ Defendant's contention that the conditions of probation are unconstitutional is refuted by *In re Mannino,* 14 Cal.App.3d 953, 958-960 [92 Cal.Rptr. 880, 45 A.L.R.3d 996]. (See also, *People* v. *Arvanites,* 17 Cal.App.3d 1052 [95 Cal.Rptr. 493].) The prohibitions were reasonably related to the type of offenses to be curbed.

■ We limit our decision to the facts of the instant case: (1) a complete plea bargain; (2) representation by counsel; (3) a qualified commissioner; (4) an acceptance of the sentence by defendant after its rendition and his living with the conditions of probation for an extended period of time; (5) the attack upon the validity of the proceedings coming

---

[9]Reference is made to a portion of the settled statement upon which the appeal was based.

[10]In substance, the settled statement states that the arresting police officer was called and sworn as a witness. He was asked by the judge "if he made the report and whether the information it contained was true and correct." He answered in the affirmative. He also indicated that defendant had no identification with him at the time of arrest. The police report was read into the record and admitted into evidence. Counsel· for defendant argued that the officer should testify as to his own recollection of the events and that the court was acting improperly by relying on the report. The objection was overruled. The officer was cross-examined.

in a different and separate proceeding; (6) the participation by defendant and his counsel in all phases of the plea bargain proceedings, effectuating what was tantamount to a stipulation that the commissioner would sit as a temporary judge.

The judgment (order) is affirmed.

Ashby, J., and Hastings, J., concurred.